. PEOPLE vs. METZ.

*Sixth District Court for Sacramento Co., Feb. T.*, 1858.

INSANITY.

Insanity, in its legal meaning, as exempting the perpetrator of a homicide from punishment for the act, is that state of mind in which the actor is unconscious of the nature, character, and consequences of his act.

However feeble the mental powers may be, the condition of the mind is not that of insanity, provided that it is capable of distinguishing the nature and consequences of the crime committed.

18

If the defendant is actuated by any motive in committing a homicide, the plea of insanity cannot be sustained—for it is only the absence of all motive that constitutes insanity. The act must be objectless.

This was an indictment found against the defendant for the murder of a young woman, whom it was proven he had proposed to marry. The facts of the case are immaterial, as only so much of the charge of the court to the jury is given as bears upon the plea interposed—namely, insanity.

*R. F. Morrison,* district attorney.

————————, for the prisoner.

BOTTS, J.—(Upon the plea of insanity) instructed the jury.

The defendant relies upon the plea of insanity.

Legal punishment is founded upon the presumption that man, in his normal condition, is capable of controlling his actions, and squaring his conduct to the established standard. When the loss of this control is occasioned by that momentary maddening which great provocation produces in the most reasonable minds, and under the sudden impulse a homicide is committed, the act, by law, is denominated "manslaughter." It is only the momentary blindness produced by the passing wave of passion that the law respects. Perhaps, to be entirely consistent with our ideas of justice, an act proceeding from irresistible passion ought not to be punished at all. That, however, is a question for the moralist and legislator. We sit here to discover the law, and to administer it as it is, and not as it should be. We are to remember, too, that the rules of law are the dictates of policy, instituted for the good of society, to which all abstract views of right and wrong are made to bend. There can be no doubt that the punishment affixed to manslaughter serves to strengthen the will, and render an impulse controllable that would otherwise be irresistible.

There is another state of the mind, if it be not a paradox to call it so, nearly allied to that which may give rise to manslaughter, but clearly distinguishable from it. This occurs when reason is entirely, though momentarily, dethroned, and the actor is unconscious of the nature, character, and consequences of his act. This the law denomi-

nates " insanity ;" and, for an act under such circumstances, it holds the actor irresponsible. If such, in your opinion, was the mental condition of the defendant when he struck the fatal blow, then is he entitled to a verdict at your hands of " not guilty."

There are undoubtedly many degrees of mental derangement, or insanity, in the common acceptation of the term, and even as it is used by medical men, that fall short of this state of unconsciousness ; and much metaphysical refinement has been expended in the discussion of this subject, both by counsel and the authors upon medical jurisprudence whom they have cited. But from these subtle inquiries you are happily relieved ; the rule of law, with which alone you have to do, is simple, plain, uncontradicted, and such as I have expressed to you. *Dr. Taylor* himself, in speaking of these medical tests of insanity, of which you have heard so much, says :

" These supposed criterea have been repeatedly and very properly rejected, when tendered as medical proofs of insanity, in courts of law. They are of too vague a nature, and apply as much to cases of moral depravity as of actual insanity. In short, if these were admitted as *proofs*, they would serve as a convenient shelter from punishment for many sane criminals."

Under this stringent rule of law, a defendant may be found legally guilty who is free from moral taint ; but under such circumstances our duty is plain and unmistakable ; the law must have its course, and the convict can look to the executive clemency only, to save him from the penalty affixed to his act. One of the most signal cases of legal guilt and moral innocence of which we have any note in history, occurred a few weeks since in a neighboring county. An affectionate husband, a fond father, a refined and educated man, an upright citizen, calmly and deliberately plans and perpetrates the murder of his wife and four prattling children, for the sole purpose of saving them from misery and destitution ; firmly believing that he was consulting their happiness in sending them into another and a better world. Had he survived the bloody tragedy he would undoubtedly have been amenable to the charge of murder, although his triers might have admired the devotion, the resolution, and the power of will involved in such a sacrifice of feeling for those he loved. But such acts, no matter from what motives they

proceed, are forbidden, and rightly too, by the stern requirements of society. The only question that policy will permit us to ask is, did the actor knowingly violate the law of his country ? To do so is itself a great wrong, and in this sense it may be said all legal guilt includes moral guilt.

The first and main question then, gentlemen, for your consideration is, did the defendant know what he was doing when the homicide was committed, of which he is the admitted author ? In considering this question you are to weigh the whole testimony tending to show the mental condition of the defendant before and after the bloody deed—only though as throwing light upon the condition of his mind at the moment of its perpetration. You are to distinguish between frivolity, vanity, eccentricity, or conceit, and total imbecility. The law very properly declines to enter into the consideration of degrees of imbecility. No matter how feeble may be the mental powers, as long as the capability of distinguishing and understanding the nature and consequences of the crime committed remains, the perpetrator is held responsible. With respect to the motive that may have influenced the defendant, I will say to you, that it is only the absence of all motive that would constitute insanity. This is the definition rather than the proof of insanity. We are not to confound motive with provocation. If the defendant acted without provocation—without any malignant feeling toward the deceased particularly, but was prompted by a reckless indifference to the spilling of blood, or a desperate disregard of his own continued existence, he might be chargeable with implied instead of express malice, and his crime might be reduced from murder in the first, to murder in the second degree. But when the act is objectless, without aim or meaning, then is the actor unconscious and insane.